The opinion of the Court was delivered by
Wardlaw, Ch.
William Vickory, who died in 1804, by his will, gave his real and personal estate, with inconsiderable exceptions, to his daughter Betty, while she remained unmarried; and upon her marriage or death, he directed the whole, to be sold and equally divided between his daughters, Ruth Hunter and Nancy Davis. Benj. Howard and Andrew McComb were appointed executors by this will, and the latter assumed the trust. Betty Victory enjoyed the estate devised and bequeathed to her until her death in 1826. Andrew McComb had previously died; and John McComb, his son and administrator, took out letters of administration on the estate of William Vickory, and, on June 9, 1826, sold the estate, real and personal, .for the aggregate sum of $51,312 68-f. He returned the sale bill to the Ordinary’s office, but made no further returns. He died in 1828. Nancy Davis died in 1825, intestate, leaving children and grand children as her next of kin. She was residing, at the time of her death, with her sister,'Betty Vickory, and was in indigent circumstances. There is some proof that John McComb, as administrator, settled with several of these children and grand children, although no receipts are produced. Ruth Hunter seems also to have died before the sale in June, 1826, leaving three children. At that sale, John Hunter, son of Ruth, purchased the land of testator for the sum of $418, and he and his sisters, Mary and Elizabeth, purchased chattels to the amount of $204 06J.
John B. Pressley took out letters of administration, de bonis non, *18 on the estate of William Yickory, and made sale of some personalty to the amount of about $80.
At the sitting of the Court of Equity for Abbeville, in June, 1831, John Hunter, Elizabeth Hunter, and Mary Hunter, filed their petition, setting forth, the seisin of land, will and death of William Yickory; the death of Ruth Hunter, leaving the petitioners as her only children and distributees; the death of Nancy Davis, leaving several children, some of whom resided without the limits of the State; the sale of the lands by John McComb, and the purchase of them by John Hunter, and that said John Hunter had given his notes for $413, due June 9, 1827, which were then unpaid, and that titles for said lands had not been made: and praying that said sale might be confirmed, and titles for said land executed and delivered to said John Hunter, on his paying the purchase money aforesaid, with interest. John B. Pressley, as solicitor for the representatives of Nancy Davis residing in the State of Illinois, consented that the prayer of the petition bo granted on the terms prayed. On July 2, 1831, Chancellor De Saussuue ordered and decreed, that the sale of the lands be confirmed, on the terms prayed, and that the Commissioner of the Court execute titles therefor to the purchaser, unless after personal notice to the parties resident in this State, and publication in a newspaper for three months, the parties in interest express dissent to the order.
Administration of the estate of Nancy Davis, at the instance of the distributees in Illinois, was granted to James H, Foster, on February 15, 1851, and he filed his petition June 2, 1851, praying that the decree of July 2, 1831, be revived, and that John Hunter pay the said sum of $413, with interest from Juno 9, 1827, to the Commissioner of the Court, for distribution among the distributees of Ruth Hunter and Nancy Davis, or that said John Hunter pay one half of said sum to the petitioner for distribution among the distributees of Nancy Davis.
The defendant, John Hunter, in his answer, states that no money has ever been paid by him to the Commissioner for this land, and *19 that no title has ever been executed by the Commissioner to him, but he alleges that the land was bought on some agreement between himself and his sisters, and that their whole purchases at said sale did not amount to one half of the whole amount of the sales, and that it ivas the understanding between himself and John McComb, that he and his sisters should have the land in part of then- share of the estate of William Yickory. The answer further states the information and belief of defendant, that all the children of Nancy Davis have received them shares from John McComb, except two of her daughters, now in Illinois, Frances Eoss and Euth Yickory; and insists that the distributees of Nancy Davis have no remedy except against the estate of McComb. Lapse of time and the statute of limitations are relied upon, as if specially pleaded.
No evidence is offered in support of the answer, as to the allegations of an agreement about the purchase of the lands between the defendant and his sisters, nor of the understanding between defendant and John McComb, that the land was to be taken in payment of the interest of defendant and his sisters in William Yickory’s estate. Pretty strong evidence, however, is offered, that John McComb settled with the distributees of Nancy Davis resident within this Ssate.
The Chancellor on the circuit decreed, that the decree of July 2, 1831, be revived, and that John Hunter pay to the Commissioner of the Court one half of the purchase money of the land, with interest — that the distributees of Nancy Davis be made parties to the proceeding — and that the Commissioner take an account of any portion of the proceeds of the sale of the land which may have been paid to these distributees.
From this decree the defendant appeals, insisting upon the lapse of time, and corroborating circumstances, as raising the presumption of payment, and disputing the right of the petitioner, as administrator, to proceed in the matter of controversy.
The right of the petitioner, as administrator of Nancy Davis, to prosecute this claim, is not entirely clear; but by the operation of *20 tbe decree of July, 1831, tbe interest of tbe distributees of Nancy Davis was converted into a pecuniary demand; and ber administrator is tbe proper person to make distribution. It is stated to us, that tbe petitioner is tbe attorney in fact of tbe distributees resident in Illinois; and if that fact bad been alleged in tbe petition, be would have been properly before tbe Court. But all objection on this point is superseded by tbe order in tbe circuit decree, to make tbe distributees parties.
Is tbe defendant protected by tbe lapse of time ? Tbe decree of July, 1831, is in effect a judgment against tbe present defendant for $413, with interest from June 9, 1827. Tbe full term of twenty years bad not elapsed, from the date of that decree, before tbe present suit was instituted; and where tbe presumption of satisfaction is urged from tbe lapse of time merely, it is indispensable that the term of twenty years be complete. Even whore this is tbe fact, tbe presumption which arises is not one of those presumptions of law which are absolutely irrebuttable, although it is of such strength that it can be overcome by scarcely any evidence. In this Court, where tbe Chancellor exercises tbe function of determining upon facts as well as law, effect would bo given to the presumption, wherever, in the Courts of Law, tbe jury should be directed to presume the fact. But where the lapse of time is less than twenty years, as in this case, 'circumstances opposing tbe conclusion of satisfaction, such as tbe admissions of tbe debtor, are entitled to full weight. Stover vs. Duren, (3 Strob. 448.) Here we have tbe statement of defendant’s counsel in tbe petition of 1831, after the death of MeComb, administrator, supported by all the circumstances of tbe case, that defendant’s notes for tbe price of the land had not been paid; and much more, we have defendant’s own admissions, in bis answer to tbe present proceeding, that no money has ever been paid by him for this land to tbe Commissioner of tbe Court, and, on bis information and belief, that two of tbe daughters of Nancy Davis, resident in Illinois, were not paid by MeComb. If tbe understanding between defendant and MeComb set up in the answer ever existed, and *21 defendant, upon whom was the burden, has offered no proof of it, such understanding could not bind those who were no parties to it, and they would still be entitled to their shares in the proceeds of the land, until it was proved they were otherwise satisfied.
It is quite true, however, that the presumption of satisfaction of the decree of 1831, does not depend solely upon the lapse of time; and that corroborating circumstances exist, which, we think, are sufficient to bar those of the distributees of Nancy Davis, who were adult residents of this State in 1826, when the sale of this land was made by the administrator, with the will annexed. It is alleged in the petition of 1831, that most of the parties in interest were present at that sale and consented thereto, (meaning to except, as we suppose, those who were absent from the State,) and after the personal notice to those in the State, directed by the decree of 1831, and presumed to be given, no objection to the decree is manifested. The administrator, McComb, had funds in his hands, from the proceeds of the chattels sold, adequate to pay the distri-butees resident here, and we should presume that he did his duty. Positive evidence, in aid of the presumption, is offered, that he did pay most of these distributees. It is not likely that, in their needy condition, they would have acquiesced in defendant’s possession of the land for a quarter of a century, if they had any just cause of clamor. The decree of 1831 recites, that the Court was informed that the distributees resident in the State consented to the order; their acquiescence makes this fact very probable. Administration on the estate of Nancy Davis was not indispensable to enable the parties to avail themselves of that decree.
On the whole, we consider the claim stale, except as to such of the distributees of Nancy Davis as were resident without the State on June 9,1826.
It is ordered and decreed, that the distributees of Nancy Davis, resident without the State on June 9, 1826, and the representative of John McComb, be made parties to this proceeding. It is further ordered and decreed, that the decree of July 2, 1831, be revived, so far as the distributees of Nancy Davis, resident without *22 the State on June 9, 1826, are interested; and that the defendant, John Hunter, pay to such distributees, so non-resident, who have not been otherwise satisfied, their portions of said decree for $413, with interest from June 9, 1827. And the Commissioner is directed to state the accounts accordingly.
The order in the circuit decree, that defendant pay over to the Commissioner one half of the purchase money of the land, with interest, is recalled; and it is ordered that said decree be reformed according to the opinions herein expressed. Costs to await the accounting before the Commissioner.
JOHNSTON, DüNKIN and DargaN, CO. concurred.

Decree modified.